UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JONATHAN DAGENHART            CIVIL ACTION NO. 13-cv-2596

VERSUS                        JUDGE HICKS

JERRY GOODWIN                 MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Jonathan Dagenhart pleaded guilty in Caddo Parish to four counts of molestation of a juvenile, and he received 25 years in total sentences. He filed a direct appeal that challenged the sentences, and they were affirmed. State v. Dagenhart, 908 So.2d 1237 (La. App. 2d Cir. 2005), writ denied, 926 So.2d 539 (La. 2006). He then filed a post-conviction application that was litigated over the course of six years in the state courts.

He now presents a petition for federal habeas corpus relief in which he argues that (1) the trial court erroneously relied on the testimony of Dr. George Seiden at sentencing and (2) counsel was ineffective for not challenging Dr. Seiden or moving for a change of venue. The State has responded to the petition by challenging it on the merits and raising a timeliness defense. For the reasons that follow, it is recommended that the petition be denied on the merits. The timeliness defense will be discussed, but the court finds that the petition was timely with zero days to spare.

**Background Facts**

Petitioner graduated from Centenary College and became a school teacher at Hamilton Terrace Alternative School in Shreveport, where he taught for eight years. He was a regular and active church member and respected member of the community. He was a CASA volunteer, and he applied to become a foster parent. Friends thought that he was a well meaning person who wanted to work with at-risk children.

Petitioner was, however, using his relationship with the children to satisfy sexual cravings. After pleading guilty, he admitted to compulsive behavior of video taping cheerleaders and children at sporting events at middle and high schools and compiling the videos to later masturbate to the images. He admitted that his attempt to become a foster parent and his service as a CASA volunteer were designed to further his contact with children. He kept several children's bathing suits at his home, and he had a pass to Water Town water park so that he could take children swimming. After his arrest, photographs were found in his home of Petitioner with young girls in bathing suits.

Petitioner's victims in the charged offenses were girls ranging from two to 10 years old. The victims would spend the night at Petitioner's apartment, and he often insisted they sleep with him in his bed. He also asked them to take a "vitamin" that made them sleepy, and the girls sometimes woke up with their panties removed or pulled down. Some complained that their privates were oily or greasy when they awoke. A couple of the children woke up while Petitioner was physically molesting them.

Petitioner said that he at first only looked at the girls' genitals while they slept. He then progressed to touching, including a fondling incident while on a swim outing. There was at least one genital-to-genital contact with a sleeping child, who awoke to find Petitioner on top of her. Petitioner admitted to the originally charged 10 acts of molestation and said that he had molested 13 to 15 children between the ages of three and 12.

**Timeliness**

A "1-year period of limitation shall apply" to petitions for habeas corpus filed by state prisoners. 28 U.S.C. § 2244(d)(1). In an ordinary case, such as this one, the limitation period runs from the date on which the state court judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." Section 2244(d)(1)(A). The State argues that the petition is untimely under this rule. Petitioner did not file a reply memorandum or otherwise respond to the timeliness defense, but the court finds that the petition is timely.

The first task is to determine the date on which Petitioner's conviction became final after direct review. Petitioner challenged his conviction on direct appeal to the intermediate appellate court. He then filed an application for a discretionary writ to the Supreme Court of Louisiana, which denied the application on April 24, 2006. Tr. 1800. Petitioner did not file a petition for certiorari to the United States Supreme Court.

"When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the

United States Supreme Court." Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008), citing Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). Supreme Court Rule 13 allows 90 days after entry of the state court's judgment to file a petition for a writ of certiorari. The 90th day after the Louisiana Supreme Court denied writs was Sunday, July 23, 2006. Supreme Court Rule 30 provides that the last day of a period shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period shall extend to the end of the next business day. Thus, the expiration of the time for filing an application for writ of certiorari with the Supreme Court was Monday, July 24, 2006. That is also the day on which the conviction is deemed final for purposes of commencing the one-year limitations period to file a federal habeas petition.[1] (To cut to the chase, this habeas petition would be untimely by one day if not for Rule 30.)

The federal limitations clock began to tick on Monday, July 24, 2006. Under Section 2244(d), Petitioner had one year to either file his federal habeas petition or file a post-conviction application in state court and toll the limitations period. Therefore, he had until Tuesday, July 24, 2007 to act. See Flanagan v. Johnson, 154 F.3d 196, 199-200 (5th Cir. 1998) and Sonnier v. Johnson, 161 F.3d 941, 944 (5th Cir. 1998) (discussing how to calculate the one year period using Fed. R. Civ. Pro. 6(a)).

---

[1] Other courts have applied Rule 30's "weekends and holidays" provision when assessing when the AEDPA limitations period commenced for a Section 2255 motion, which applies a similar one-year period. Chevres-Motta v. U.S., 2012 WL 5930658, *2 (D. P.R. 2012); Rose v. Lee, 2007 WL 2050823, *2 n. 4 (W.D. Va. 2007).

Petitioner did not file a federal habeas petition by the July 24, 2007 deadline. But he did file a post-conviction application in state court. Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation" under the statute.

The filing of a post-conviction application does not restart the federal one-year period. All time that passes between finality of the conviction and the filing of a post-conviction application counts against the one-year period. Lawrence v. Florida, 127 S.Ct. 1079, 1081-82 (2007) (explaining how tolling by post-conviction application stops the clock but does not restart it); Flanagan, 154 F.3d at 199 n. 1 (same). Accordingly, the post-conviction application must be filed before the federal year passes.

Counsel for Petitioner signed the certificate of service on his post-conviction application and dated it July 19, 2007. The Caddo Parish Clerk of Court stamped the document filed July 24, 2007. Tr. 1801, 1804. The State argues that the application was filed July 26, 2007, which would make it too late for tolling purposes, but the 26th is the date on the scan code that indicates when the Clerk of Court scanned the document for imaging purposes. The filing date was July 24, 2007, when the document was stamped received by a deputy clerk.[2] This was confirmed by telephone inquiry to the state clerk of court about the

---

[2] Petitioner states in some filings that his post-conviction application was filed on July 19, 2007, the day it was signed. Perhaps this is an implied invocation of the prisoner mailbox rule. The mailbox rule has its roots in Houston v. Lack, 108 S.Ct. 2379 (1988), which held that a pro se prisoner's notice of appeal was deemed filed when he

---

deposited it with prison authorities for mailing to the federal court three days before the deadline. The rationale was that pro se prisoners cannot personally travel to the courthouse to see that their filing is stamped filed on time. The pro se prisoner has no choice but to entrust the forwarding of his filing to prison authorities whom he cannot control or supervise and who may have the incentive to delay. The Supreme Court has since dubbed Houston's holding the "prison mailbox rule." Johnson v. United States, 125 S.Ct. 1571, 1576 n. 2 (2005).

Among the first Louisiana decisions to adopt the prison mailbox rule was Tatum v. Lynn, 637 So.2d 796 (La. App. 1st Cir. 1994). It applied the Houston principles and held that a pro se prisoner was entitled to the benefit of the mailbox rule for his petition for judicial review that he deposited with prison authorities. The Supreme Court of Louisiana has since applied the prison mailbox rule with consistency as a matter of state law. Causey v. Cain, 450 F.3d 601, 604 (5th Cir. 2006) (collecting cases).

The Fifth Circuit has recognized Louisiana's application of the prison mailbox rule and takes it into consideration when determining when the tolling effect of a post-conviction application begins. A Louisiana prisoner's pro se post-conviction application is deemed filed when he delivers it to prison authorities for forwarding to the court. LeBeuf v. Cooper, 2007 WL 1010296 (5th Cir. 2007), citing Causey, 450 F.3d at 605-06.

Petitioner, however, is not a pro se litigant who was forced to rely on prison officials to deliver his mail to the court. He has been represented by counsel throughout these proceedings, including the filing of his post-conviction application. The rationale of the prison mailbox rule does not apply to prisoners who are represented by counsel, and the Fifth Circuit has expressly held that the rule is inapplicable to federal filings by represented prisoners. Cousin v. Lensing, 310 F.3d 843, 847 (5th Circuit 2002). The court explained that the rule is justified by the unique situation of prisoners who do not have the aide of counsel, citing Houston v. Lack, but "[t]he same rationale does not support application of the mailbox rule to prisoner litigants who are represented by counsel." Id.

The court has not located a Louisiana state court decision that expressly rejects application of the prison mailbox rule to a prisoner who is represented by counsel, but in the cases reviewed by the court the rule has been applied only for pro se prisoners. Federal district courts faced with this same situation have held that a post-conviction application filed in the state court by counsel is not entitled to the benefit of the mailbox rule. See, e.g., Batiste v. Rader, 2011 WL 8185554, *2 (E. D. La. 2011) ("Because petitioner's post-conviction application was filed by counsel, he is not entitled to the benefit of the mailbox rule.") and Brown v. Cain, 2011 WL 5509078, *1 (E. D. La. 2011) ("Because the post-conviction application was filed by counsel, the mailbox rule ... is not applicable."). Thus, it appears that the post-conviction application, like other filings by attorneys, was deemed filed when it was received by the Clerk of Court on July 24, 2007,

filing date of this particular document. Counsel filed with the application a Motion to Compel Answer, Motion for Evidentiary Hearing, and Petition for Writ of Habeas Corpus Ad Testificandum. Each of those filings is also clearly stamped filed July 24, 2007. Tr. 1902-05.

The post-conviction application was timely and properly filed under Louisiana rules, which allowed two years for filing. La. C. Cr. P. art. 930.8. It was filed on July 24, 2007, the last day of the federal limitations period, so it had a tolling effect. Tolling by a properly filed post-conviction application continues so long as it is pending. It is pending for tolling purposes "on the day it is filed through (and including) the day it is resolved." Windland v. Quarterman, 578 F.3d 314, 317 (5th Cir. 2009).

At the end of the post-conviction process, the Supreme Court of Louisiana denied writs by order dated Friday, August 30, 2013. Counsel for Petitioner filed this federal petition on the very next business day, which was September 3, 2013 (the Tuesday after Labor Day). Petitioner's counsel stretched things as far as they would go at every turn, but his federal petition is nonetheless timely as it was filed on the 365th un-tolled day.

Some decisions say that when a prisoner files a post-conviction application in state court on day 365, he has to file his federal petition on the very day that the post-conviction process ends, which in this case was the August 30, 2013 "writ denied" from the Louisiana Supreme Court. See, e.g., Martin v. Ryan, 318 Fed. Appx. 457 (9th Cir. 2008) and Green

---

the final day of the federal limitations period.

v. Cain, 2015 WL 5060608, *5 n. 15 (E.D. La. 2015). Other courts say that the day on which the state application is filed is not counted, because it was tolled by the pending application filed on that day, which gives the prisoner one day after the post-conviction process ends to filed a federal petition. See, e.g., Garcia v. Patton, 2015 WL 3442089, *2 (N.D. Ok. 2015) and Nelson v. Superintendent of SCI Huntingdon, 2009 WL 918097, at *3 n. 5 (W.D. Pa. 2009).

The undersigned finds that the latter group of decisions, which afford one day after the post-conviction process ends, are more consistent with the Fifth Circuit's statements that (1) tolling lasts from the day the post-conviction application is filed through (and including) the day it is resolved and (2) the limitations period is counted pursuant to Fed. R. Civ. Pro. 6(a). Petitioner filed his state application on what would have been day 365, but his filing tolled that day so that it did not count toward the limitations period. That tolling effect continued through the final day the application was pending, a Friday, so that final day also did not count. Rule 6(a)(1)(C) states that the last day of a period is counted, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next business day. Petitioner filed his federal petition on the next business day, which was the 365th un-tolled day, so his federal petition was timely by the thinnest of margins.

**Dr. Seiden's Testimony at Sentencing**

Petitioner was released on bond, and he went home to Tennessee to live with his parents and seek treatment. He joined a church-affiliated sexual addiction counseling service and was subjected to testing by officials in Tennessee. At sentencing, defense counsel

presented testimony from Dr. Paul Ware (psychiatrist) and Dr. Lisa Harper (psychologist), both of Shreveport, who opined that Petitioner showed a low likelihood of recidivism and was a good candidate for rehabilitation in a structured program. He also presented reports from Drs. Perlman and Young, psychologists. The State called Dr. George Seiden, a Shreveport psychiatrist, to testify. Seiden did not agree that Petitioner was a good candidate for rehabilitation or unlikely to repeat his offenses. Petitioner argues that the trial court erred in relying in the testimony of Dr. Seiden because he did not have the appropriate expertise in the field of pedophilia and recidivism.

Judge Jeanette Garrett stated that she had considered and reviewed all of the reports and testimony from the experts. She did not make any particular mention of the competing opinions about likelihood of recidivism, but she noted that: "All the experts agree that this defendant is a pedophiliac and there is a risk of recidivism." She noted mitigating factors such as Petitioner's prior gainful employment, use of teaching skills to help fellow prisoners, and his statement of remorse. Petitioner had no prior convictions, but the judge noted that Petitioner had engaged in criminal conduct for many years while avoiding getting caught. She opined that there was an undue risk that if Petitioner were put on probation he would commit another crime. She reviewed each of the counts of conviction in detail, noting the young ages of the victims and the position of trust that Petitioner had in each of their lives. She described how the victims were particularly vulnerable, and how Petitioner had engaged in a series of lies and deceptions to further his sexual interest in children.

Judge Garrett found that Petitioner was a "devious, deceptive, manipulative, and dangerous person who needs to be incarcerated to protect the public." On three of the counts, the court imposed 10-year sentences to run concurrently. On one count, which involved the molestation of a two-year-old while Petitioner was babysitting at her home, the court found the crime was a sufficiently different course of conduct or scheme to merit a 15-year sentence to be served consecutively with the other three sentences. Tr. 1613-25.

Petitioner argues that his constitutional rights were violated because Judge Garrett considered the testimony of Dr. Seiden when, Petitioner contends, it did not comply with the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993). Petitioner first presented this claim in his post-conviction application. The trial court did not rule on the original application. When Petitioner filed a supplemental application several months later, complete with citation to authority regarding its relation back to the original application, Judge Michael Pitman ruled that the Daubert challenge was repetitive (because a challenge to the sentence had been addressed on direct appeal) and that the application was untimely. Tr. 2045-46. Petitioner proceeded to the appellate court and pointed out that his original application had never been ruled on and had been timely by several months. The appellate court nonetheless stated only: "For the reasons assigned by the trial court, the writ is denied." Tr. 2320. The Supreme Court of Louisiana denied writs without comment. Tr. 2608.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). But for claims that are not adjudicated on the merits in the state court, the federal court applies a *de novo* standard of review. Hoffman v. Cain, 752 F.3d 430, 437 (5th Cir. 2014). To determine whether the state court adjudicated the merits of a federal claim, we look to the "last reasoned state-court opinion." Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991); Robinson v. Louisiana, 606 Fed. Appx. 199, 203 (5th Cir. 2015).

The last state court decision of any substance was the state trial court's decision that denied the post-conviction application. It specifically relied on untimeliness and repetitiveness to deny this claim, and the merits were not mentioned. Thus, a *de novo* standard of review applies.

Petitioner does not cite any authority that holds Daubert requirements must be met for the consideration of expert testimony at sentencing. Louisiana decisions do not support such a contention. The Louisiana courts have long recognized that the "sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration of otherwise relevant information." State v. Washington, 414 So. 2d 313, 315 (La. 1982). Of course, habeas relief is available only for violation of federal constitutional requirements. Violations of state law will not suffice. Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).

Petitioner has not cited any federal authority that has held the requirements of Daubert applicable at a sentencing hearing. The Fifth Circuit has stated: "No Circuit that we are aware of has applied Daubert to sentencing." U.S. v. Fields, 483 F.3d 313, 342 (5th Cir. 2007). The federal courts have also stated that it is "well settled that, in the federal courts, the rules of evidence generally do not apply at a sentencing hearing, even one in which the death penalty is a possibility." Flores v. Johnson, 210 F.3d 456, 464 (5th Cir. 2000).

Dr. Seiden, now deceased, was offered as an expert in forensic psychiatry, and the defense stipulated to his qualifications in that field. Tr. 1474. Dr. Seiden was a well-known and well respected expert witness in this community. He testified that he had evaluated sex offenders numerous times and testified concerning their cases many times. Tr. 1475. Petitioner now argues that Dr. Seiden (1) did not have particular expertise in pedophilia and recidivism and (2) almost always testified for the State in reported criminal cases, but Petitioner has not cited any authority that would have compelled the state court to exclude Seiden's testimony, as a matter of constitutional law, despite the lack of any defense objection on these grounds. Petitioner is unable to meet his habeas burden on this claim even under a *de novo* standard of review.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner argues that defense counsel was ineffective because he did not challenge Dr. Seiden as an expert and did not file a motion for change of venue. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's

performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

### B. State Court Decision; Habeas Review Standard

Petitioner first raised these claims in his post-conviction application. Judge Michael Pitman discussed the requirements of Strickland and stated, summarily, that Petitioner "fails to meet the requirements of the Strickland test because he does not demonstrate that there would have been a different outcome." Tr. 2046. The appellate court and Supreme Court summarily denied writ applications.

The last reasoned state court decision of this claim was on the merits, as opposed to procedural grounds, so the deferential standard of Section 2254(d) applies. And "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision. The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. Pinholster, 131 S.Ct. at 1402, citing Harrington v. Richter, 131 S.Ct. 770, 786 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision." Richter, quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004).

The question for this court is not whether it believes the state court's determination under Strickland was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009). This difficult standard "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Harrington v. Richter, 131 S.Ct. 770, 786 (2011). "[E]ven a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

### C. Challenge to Dr. Seiden

Petitioner argues that defense counsel, Peter Flowers, should have challenged Dr. Seiden's testimony for lack of expertise. Mr. Flowers is a well-respected criminal defense attorney with decades of experience, and he has tried a number of sex crime cases. Despite his skill and expertise, it is extraordinarily unlikely that he could have succeeded in excluding the testimony of Dr. Seiden, because Seiden enjoyed an excellent reputation in the local court system and testified frequently in civil and criminal cases. The trial court had, as discussed above, a great degree of discretion as to which evidence she would consider in assessing a sentence. It is difficult to imagine any argument that Mr. Flowers could have

made that would have resulted in the complete exclusion of Seiden's testimony from the hearing.

Mr. Flowers did cross-examine Dr. Seiden at length, beginning with an emphasis on his lack of any particular qualification in the treatment of sexually deviant disorders. Seiden conceded that he was not a specialist in that area. Flowers then proceeded, at length, to attempt to poke holes in some of Seiden's opinions and the cited grounds for them. Tr. 1489-1524. In the end, the sentencing judge did not place any particular reliance on any of the expert witnesses when giving the reasons for her sentence. She noted only that all of the experts agreed that Petitioner was a pedophile.

Given these facts, Petitioner has not met his heavy burden under Section 2254(d) of showing that the state court's rejection of his Strickland claim was not only incorrect but was so wrong as to be an objectively unreasonable application of the already deferential Strickland standard. This was not one of the extreme malfunctions in the state criminal justice system that permits federal habeas tinkering with a state court conviction or sentence. Relief on this claim should be denied.

### D. No Motion to Change Venue

Petitioner alleges counsel was ineffective for not filing a motion to change venue because of pretrial publicity and sentiment in the community. Pretrial publicity may require a change of venue because the Sixth Amendment secures defendants the right to a trial by an impartial jury. Skilling v. U.S., 130 S.Ct. 2896, 2912-13 (2010). There was no jury in this case, however, because Petitioner pleaded guilty.

A valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights, subject to exceptions such as a claim that challenges the validity of the guilty plea itself. Tollett v. Henderson, 93 S.Ct. 1602 (1973); Matthew v. Johnson, 201 F.3d 353, 364 (5th Cir. 2000). Petitioner does not challenge his plea or invoke an exception to this rule. Instead, he argues that his sentencing was affected by the community's opinions of his case. Had there been a transfer to a different parish, Petitioner argues, the trial judge would have been further removed from the scrutiny of the community and could have properly considered all evidence and testimony presented at the sentencing.

Review of a Strickland claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Petitioner does not point to any evidence in the record to support his claim that the views of the community were so strong as to require a change of venue even for sentencing. The trial judge did comment that this had been "a very emotional case" with "a lot of animosity and anger directed to" both the prosecutor and defense counsel. She stated that, despite the difficulties, the attorneys were able to reach a resolution that allowed closure for the victims and their families. Tr. 1621-22. That is to be expected in a case of this kind, but that is not sufficient evidence to render counsel constitutionally ineffective because he did not seek a change of venue. There is also little reason to believe that the judge, who would continue to preside even if there were a change of venue, would have altered her sentence had it been handed down in a different courthouse.

Finally, Petitioner has not cited any clearly established Supreme Court precedent that would compel defense counsel to file a motion for change of venue in similar circumstances, even when the defendant pleaded guilty. For these reasons, the state court's rejection of this Strickland claim was not an objectively unreasonable application of that deferential standard. This final claim should also be denied.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of July, 2016.

_____
Mark L. Hornsby
U.S. Magistrate Judge